## NORFOLK & W. RY. CO. v. EMMONS COAL MINING CO. et al.

### SAME v. WESTON DODSON & CO. et al.

(District Court, E. D. Pennsylvania. March 10, 1923.)

Nos. 8922, 8914.

1. **Carriers ⬅100(1)—In suit against consignee, member of coal exchange, for demurrage, held liable, notwithstanding consignment was made in care of exchange.**

   Where coal was consigned to consignees in care of a coal exchange, of which they were members and whose rules expressly provided that the members of the exchange should be responsible for demurrage charges accruing to their account, the consignees are liable for the demurrage, notwithstanding the "care of" consignment especially where their title to the coal was not divested under the rules of the exchange until their coal was used as equivalent for that to be delivered on the contract of another member.

2. **Carriers ⬅100(1)—Rules of exchange held unnecessary to demurrage charge under tariffs.**

   Where the railroad company's tariffs on file with the Interstate Commerce Commission provided for every essential element of its claim for demurrage, and the statement of claim set out the articles and rules of the coal exchange in whose care the shipment was consigned merely to show that defendants as members of the exchange, and through it as their agent brought themselves within the terms of the tariff, an objection that the rules of the coal exchange were not filed with the Interstate Commerce Commission is not tenable.

3. **Carriers ⬅100(1)—Objection to substitution of cars in fixing demurrage affects reasonableness of tariff only, and is not for court to determine.**

   An objection to a provision of a carrier's tariff substituting the date on which a car should be released for the date when its equivalent is unloaded, so as to cause a car, when unloaded, to be charged with demurrage after its actual release, goes only to the reasonableness of the tariff or its discriminating effect, and is not for the court to determine.

4. **Carriers ⬅100(1)—Filed tariff is law until Commission determines reasonableness.**

   When a carrier's tariff is filed with the Interstate Commerce Commission or published, it becomes the law between the shipper and the carrier until the Commission has determined what are the just and reasonable rates to be charged, and in the meantime the carrier is prohibited from departing from the tariff, and its only remedy, if the shipper refuses to pay the tariff charges, is to sue for their recovery.

At Law. Separate actions by the Norfolk & Western Railway Company against the Emmons Coal Mining Company and another and against Weston Dodson & Co. and another. On affidavits of defense

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

raising questions of law. Defenses overruled, with leave to the defendants to file affidavits of defense to the merits.

Theodore W. Reath, F. M. Rivinus, and J. Hamilton Cheston, all of Philadelphia, Pa., for plaintiff.

William G. Wright and Conlen, Acker, Manning & Brown, all of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. These cases were argued together, and, as the defenses raised in No. 8914 are included within those raised in No. 8922, they will be considered together. The plaintiff's claim in each case is for the recovery of demurrage charges upon cars containing bituminous coal for transshipment by vessel at Norfolk and Lambert's Point, Va. The demurrage is alleged to be chargeable under Tariff C. & C. No. 4056, I. C. C. No. 2826–B, a copy of which is attached to each statement of claim. Both defendants were, at the time of the accrual of the demurrage, members of the Lambert's Point Coal Exchange. A copy of the articles of organization and rules of the exchange is attached to the statement of claim. The purpose of the exchange rule 2 is to reduce coal classifications and necessary switching thereof, to facilitate dumping, thereby expediting the dispatch of vessels and augmenting car supply at the mines; to act as agent for the pooling of coal, and to execute orders to the railway company for delivery of tonnage to vessels; to permit the use by a shipper of coal of the same pool to which the member has made shipments, and to the extent of such contributions without being required to apply on the delivery order of a member the identical coal consigned to him. Each member is required under rule 16 to furnish a blanket order authorizing the railway to accept from the manager of the exchange, who is appointed and paid by the railway company, his orders for delivery of coal consigned to the member in care of the exchange. It is provided by rule 17 that members shall be responsible to the railway company for demurrage charges accruing to their account and shall file an agreement with the railway company providing, inter alia, that—

"The undersigned further agrees to pay any demurrage accruals under the tariff of the railway company, car day's detention to be computed by subtracting the date of arrival of cars shipped for account of the undersigned from the date of release of equivalent cars."

It is also provided in rule 31:

"Car demurrage will be assessed by the railway company on the average basis for the account of individual shipper responsible. Detention will be computed by subtracting date of arrival of cars shipped from date of release of equivalent cars. Credit car days of a member shipping in care of the Lambert's Point Coal Exchange shall not offset debits of another member."

Under the tariff the cars subject to rules are cars containing coal for transshipment direct to vessels or to be stored for shipment by vessels when held for or by consignors or consignees for unloading, forwarding directions or for any other purpose, with exceptions immaterial to this case. The tariff allows a free time of five days per car; time to be computed from the first 7 a. m. after the day on which no-

tice of arrival is sent or given to the consignee. Sundays and legal holidays are excluded.

By rule 3 (b):

"A car shall be considered as released:

"1. At the time vessel registers for the cargo or fuel supply of which the coal, coal briquets, or coke dumped into such vessel is a part, except that when cars are unloaded before the vessel registers, such cars shall be released when unloaded.

"2. To avoid delay that would be entailed in switching out and delivering on shipper's order, in actual sequence of arrival, cars containing the same grade of coal, as indicated by the identifying consigning names or numbers on the waybills, the dates on which cars should have been so released (as indicated by the record) will be substituted for the dates on which equivalent tonnage was actually delivered and the detention will be computed on the basis of such substituted dates.

"3. The dates shipments are transferred by written order and acceptance to another party shall be considered the date of release of the car for the account of the original consignee and subsequent detention shall be charged in the account of the new consignee without any free time allowance.

"4. Any fraction of day will be computed as one day."

By rule 4:

"Settlement shall be made on the basis of detention to all cars released during the month. The date of arrival notice shall be subtracted from the date of release. From the total days' detention to all cars thus obtained, deduct all Sundays and legal holidays following the date of arrival and five (5) days free time allowance for each car, except on cars containing coke for export deduct ten (10) days' free time allowance for each car; the remainder, if any, will be the number of days to be charged at the rate of $2.00 per car per day. Excess credit days of any one month cannot be deducted from the excess debit days of another month."

The statement of claim in each case, after reciting the applicable provisions of the tariff, avers that, at various times during certain months in 1920 and 1921, the coal company defendant received at Lambert's Point, Va., and disposed of by transshipment in vessels, the equivalent in tonnage and in grade (as indicated by identifying consigning numbers) of carload shipments of coal, which coal had been transported in cars in interstate commerce by the railway company consigned to the coal company, care of Lambert's Point Coal Exchange, at Lambert's Point, Va.

It is then averred that the coal company failed to dispose of the coal so consigned to the coal company or its equivalent within the free time provided by the tariff, whereby demurrage accrued thereunder as indicated in statements annexed to and made part of the statement of claim. The statements show, as to each grade and consigning pool number, and as to each car consigned to the coal companies and charged with demurrage, the following information:

"(a) Car initial and number; (b) the identifying consigning number indicating grade of coal; (c) date on which notice of arrival was given the coal company; (d) date of release, which under the tariff was date of registry of vessel into which the coal contained in the car, or its equivalent, was dumped; (e) total days' detention; (f) free time, including Sundays, legal holidays, and five days' tariff allowance; (g) number of days for which demurrage is payable or credit allowable."

There are also attached supplemental statements giving summaries of the detailed exhibits and showing the debit or credit days accruing in each month as to each consigning pool number, and the net result, made by adding the debits for each consigning pool number or subtracting from such debits the number of credit days due.

The Emmons Company and its surety set up in the affidavit of defense that the court has no jurisdiction to entertain the suit, because the reasonableness of the tariff is in controversy in a complaint pending before the Interstate Commerce Commission, in which the Emmons Company is a party complainant and the Norfolk & Western Railway Company is the defendant. This defense is not urged and will not be considered.

[1] The statement sets out that the consignments were billed to the defendants in accordance with rule 23, care Lambert's Point Coal Exchange. It is claimed on behalf of both defendants that therefore the demurrage is chargeable, if at all, against the Lambert's Point Coal Exchange, and not against the defendants individually. This contention is directly contrary to the agreement set out in article 17 of the rules of the exchange, providing that members of the exchange shall be responsible for the railway company's demurrage charges accruing to their account, and shall pay such demurrage accruals under the tariff of the railway company, computed as in this case. The cases cited by defendants, in which "care of" consignments have been construed, involve the question whether there was a good delivery, or whether title passed upon delivery to the party in whose care the consignment was made or to the consignee named. I fail to see that these decisions have any material bearing upon the consignees' liability for demurrage.

By the terms of the articles of organization and rules of the exchange, the latter is to act as an agency for the purposes recited and by the agreement under which the railway company appoints a manager to administer the affairs of the exchange and pays his salary and certain expenses, the member agrees to pay accrued demurrage. There is nothing in the articles and the rules divesting the members of property in their coal until, under a member's order, coal consigned to his account is diverted to a vessel to fill the contract of another member having a credit for coal in the same pool. The member, therefore, has the rights of a consignee until his blanket order has been executed. This is apparent because the blanket order is expressly revocable upon notice. His title is not divested, therefore, until his coal is used as equivalent for that to be delivered on the contract of another member.

[2] It is also objected that the tariffs cannot be construed in accordance with the plaintiff's claim, except in connection with the articles and rules of the exchange, and that those rules were not filed with the Interstate Commerce Commission. Examination of the tariff and the rules is not convincing of the correctness of the defendant's contention. Every essential of the railway company's claim is in accordance with the terms of the tariff itself. It is therein provided that a car shall be considered as released at the time the vessel registers, unless the cars are unloaded before registry, in which case such car shall be released when unloaded. That the dates on which cars should

have been so released (as indicated by the record) will be substituted for the dates on which equivalent tonnage was actually delivered and the detention will be computed upon the basis of such substituted dates. This is all in accordance with the agreement of the members of the exchange as set out in its articles and rules.. I find nothing in the statement of claim which bases a charge for demurrage upon anything provided for in the articles and rules which is not included within plain meaning of the tariff.

In short, while the articles and rules are set out in the statement of claim, they merely show what the defendants, as members of the exchange, through the exchange as their agent, did to bring them within the terms of the tariff. The tariff, in my opinion, is complete in itself, and no claim is made for any other service which affects the rates and charges for demurrage, and which should necessarily and properly be made a part of the tariff filed under section 6 of the Interstate Commerce Act (Comp. St. § 8569.) The charges were not assessed on the authority of the rules, but on the authority of the tariff. That certain things were done in the way of substituting coal or shipping equivalent coal does not vary the tariff, but merely shows the applicability of the tariff to the defendants' shipments.

[3] It is objected that the tariff charges are without legal warrant, because demurrage accrues only for the detention of a vehicle for transportation, and the provision of the tariff substituting the date on which a car should be released for the date when its equivalent is unloaded causes a car, when unloaded, to be charged with demurrage after its actual release. In this substitute or equivalent feature of the tariff there may be advantages to the shipper or consignee, which offset apparent disadvantage to them and benefit to the railway company. It may be that the prompt switching and delivery to the vessel of equivalent coal substituted for that remaining on the tracks prevents delay and demurrage to the vessel, and that in balancing of conditions the coal companies receive some advantage or some disadvantage. This is a matter which goes to the reasonableness of the tariff or its discriminating effect, and is not for the court to determine.

[4] As far as appears in the Interstate Commerce Act (Comp. St. § 8563, et seq.) in the decisions of the Commission or of the courts, there is no hard and fast rule prohibiting demurrage being charged on a basis other than per diem delay. While it is true that it is charged for detention, there may be considerations which make allowable the extra charge beyond actual detention up to the time the car would have been unloaded, if prompt service in switching and the release of cars in order of arrival were not applied. The tariff may be unreasonable, but I see nothing in it to make it unlawful, upon other grounds than being unreasonable or discriminatory. When the tariff is filed or published, it becomes the law between the shipper and the carrier until the Interstate Commerce Commission has, upon the complaint of the shipper, determined what are the just and reasonable rates to be charged. Gimbel Brothers v. Barrett (D. C.) 215 Fed. 1004; Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075.

Meanwhile, the carrier is prohibited from departing from the tariff or collecting any other charges than those therein contained, and there is no provision in the law for a suspension of the tariff until the commission has acted upon the application of the shipper. The carrier's only remedy, therefore, if the shipper fails or refuses to pay the tariff rates and charges, is to sue for their recovery. The remedy of the shipper, if the tariff is found by the Commission to be unjust or unreasonable or discriminatory, is upon a complaint to the Commission for reparation.

The defenses of law are held insufficient, and are overruled, with leave to the defendants to file affidavits of defense to the merits.